**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X

JACKSON ORTIZ HERNANDEZ,

Plaintiff,

– against –

COUNTY OF ORANGE; SHERIFF PAUL ARTETA, individually and in his official capacity; CORRECTION OFFICER MICHAEL DELGADO, Shield/ID No. 134; CORRECTION OFFICER DANIEL A. FIGUEROA, Shield/ID No. 132; CORRECTION OFFICER KONSTANTIN MEDOV, Shield/ID No. 529; CORRECTION OFFICER GREG PALMER, Shield/ID No. 305; CORRECTION OFFICER CARLOS CANARIO Shield/ID No. 104; CORRECTION OFFICER EUGENE STRINGER, Shield/ID No. 479; CORRECTION OFFICER JAMES HOUSE, Shield/ID No. 496; CORRECTION OFFICER ANDRE ROBINSON, Shield/ID No. 109; CORRECTION OFFICER VINCENT MURPHY, Shield/ID No. 544; CORRECTION OFFICER CHRISTOPHER MACKEY, Shield/ID No. 527; SUPERVISORY OFFICER JOSHUA DEENTREMONT, Shield/ID No. 017; and JOHN DOE OFFICERS 1–10, the names "John Doe" being fictitious and intended to designate officers and employees of the Orange County Sheriff's Office whose identities are presently unknown to Plaintiff,

Defendants.

----------------------------------------------------------------------X

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff **JACKSON ORTIZ HERNANDEZ** ("Plaintiff"), by and through his attorneys, **SACCO & FILLAS, LLP**, as and for his Complaint against Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action arising out of the beating of a civil immigration detainee by correction officers at the Orange County Correctional Facility ("OCCF") in Goshen, New York,

and the punitive isolation, denial of medical care, and inhumane conditions of confinement that surrounded it.

2. Plaintiff, a citizen of Venezuela, was held in civil immigration detention. He was never accused of, charged with, or convicted of any crime. After the federal government failed to honor multiple rulings obtained by his immigration counsel directing his release, Plaintiff undertook a hunger strike as a peaceful protest of his continued detention and conditions.

3. On September 10, 2025, in response to that peaceful protest, Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, struck Plaintiff repeatedly in the chest, knocked him to the ground, and injured, *inter alia*, his left knee, neck, back, and finger, before locking him in a medical isolation unit that was solitary confinement in all but name.

4. Officers thereafter prevented Plaintiff from reporting his injuries to medical staff, confined him for days on a broken mattress with exposed springs, fed him expired food, and released him from isolation only after he abandoned his protest by eating.

5. Within weeks, Plaintiff twice attempted suicide. Upon his return from hospitalization, Defendants failed to regularly provide him the antidepressant medication he had been prescribed or provide general medical care for his physical and mental injuries.

6. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and under the common law of the State of New York, seeking compensatory and punitive damages, attorneys' fees, and such other relief as the Court deems just.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the deprivation, under color of state law, of rights secured by the Constitution of the United States.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Orange County, New York, which lies within this District.

## PARTIES

10. Plaintiff, JACKSON ORTIZ HERNANDEZ, is a citizen of Venezuela. At all times relevant to this Complaint, Plaintiff was detained in New York City and then placed in the custody of the Orange County Sheriff's Office at OCCF, located at 110 Wells Farm Road, Goshen, New York, solely as a civil immigration detainee pursuant to an agreement between Orange County and U.S. Immigration and Customs Enforcement ("ICE"). Plaintiff was released from custody on January 14, 2026, and presently awaits a determination in his immigration proceedings.

11. Defendant County of Orange (the "County") is a municipal corporation organized and existing under the laws of the State of New York. The County owns, operates, funds, and maintains OCCF, employs the correction officers assigned to it, and is responsible for the policies, practices, and customs of the Orange County Sheriff's Office and OCCF, including the hiring, training, supervision, and discipline of their officers and employees.

12. Defendant Sheriff Paul Arteta (the "Sheriff") is, and at all relevant times was, the Sheriff of Orange County. As Sheriff, he is the custodian of OCCF and of the persons detained there, and is responsible for the care, custody, and safekeeping of detainees at OCCF, and for the appointment, assignment, supervision, and discipline of the correction officers who staff it. He is sued in his individual and official capacities.

13. Defendant Correction Officer Daniel A. Figueora, Shield/ID No. 132, is, upon information and belief, a correction officer employed at OCCF who was assigned to transfer Plaintiff to the medical unit or medical isolation area of OCCF during the late afternoon or early evening hours of September 10, 2025, and who participated in the use of force against Plaintiff described herein. He is sued in his individual capacity and as an agent, employee, or servant of OCCF.

14. Defendant Correction Officer Michael Delgado, Shield/ID No. 134 is, upon information and belief, a correction officer employed at OCCF who was so assigned on September 10, 2025, and who participated in the use of force against Plaintiff described herein. He is sued in his individual capacity and as an agent, employee, or servant of OCCF.

15. Defendant Correction Officer Konstantin Medov, Shield/ID No. 529 is, upon information and belief, a correction officer employed at OCCF who was so assigned on September 10, 2025, and who participated in the use of force against Plaintiff described herein. He is sued in his individual capacity and as an agent, employee, or servant of OCCF.

16. Defendant Correction Officer Greg Palmer, Shield/ID No. 305 is, upon information and belief, a correction officer employed at OCCF who was so assigned on September 10, 2025, and who participated in the use of force against Plaintiff described herein. He is sued in his individual capacity.

17. Defendant Correction Officer Carlos Canario, Shield/ID No. 104, is, upon information and belief, a correction officer employed at OCCF who was present during the use of force against Plaintiff on September 10, 2025, and/or during the events that followed, and who failed to intervene to prevent or stop the violation of Plaintiff's rights. He is sued in his individual capacity and as an agent, employee, or servant of OCCF.

18. Defendant Correction Officer Eugene Stringer, Shield/ID No. 479, is, upon information and belief, a correction officer employed at OCCF who was present during the use of force against Plaintiff on September 10, 2025, or during the events that followed, and who failed to intervene to prevent or stop the violation of Plaintiff's rights. He is sued in his individual capacity and as an agent, employee, or servant of OCCF.

19. Defendant Supervisory Officer Joshua DeEntremont, Shield/ID No. 017, is, upon information and belief, a sergeant, lieutenant, or other supervisory officer employed at OCCF who was responsible for supervising the officers and the medical isolation unit involved in the events described herein, who directed, authorized, condoned, or was personally involved in those events. He is sued in his individual capacity and as an agent, employee, or servant of OCCF.

21. Defendants Correction Officer James House, Shield/ID No. 496, Correction Officer Andre Robinson, Shield/ID Number 109, Correction Officer Vincent Murphy, Shield/ID No. 544, and Correction Officer Christopher Mackey, Shield/ID No. 527, are, upon information and belief, officers or employees of the Orange County Sheriff's Office at OCCF who participated in, were present for, supervised, or contributed to the violations of Plaintiff's rights described herein, and whose identities and precise roles are presently unknown to Plaintiff. They are sued in their individual capacities and as an agent, employee, or servant of OCCF.

23. At all relevant times, each individual Defendant acted under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New York and the County of Orange, and within the scope of his or her employment. To the extent any Defendant is determined to have acted under color of federal law by reason of the County's agreement with ICE, Plaintiff pleads his constitutional claims in the alternative under the Due Process Clause of the Fifth Amendment.

## INAPPLICABILITY OF THE PLRA AND SATISFACTION OF CONDITIONS PRECEDENT

24. At all relevant times, Plaintiff was detained solely on civil immigration grounds. He was not accused of, convicted of, or sentenced for any violation of criminal law, nor detained for any violation of the terms of parole, probation, pretrial release, or any diversionary program. Plaintiff therefore was never a "prisoner" within the meaning of 42 U.S.C. § 1997e(h), and the Prison Litigation Reform Act does not apply to this action.

25. In addition, and in the alternative, Plaintiff was released from custody on January 14, 2026, prior to the commencement of this action. Because Plaintiff was not confined at the time of filing, the Prison Litigation Reform Act, including its administrative exhaustion requirement, does not apply to this action.

26. On December 9, 2025, within ninety days of the accrual of his claims, Plaintiff timely served a Notice of Claim upon the County of Orange, the Orange County Department of Corrections, and the Orange County Sheriff's Office pursuant to New York General Municipal Law § 50-e, setting forth the nature of his claims, the time, place, and manner in which they arose, and the injuries sustained.

27. On April 21, 2026, Plaintiff appeared for and completed an examination pursuant to New York General Municipal Law § 50-h.

28. More than thirty days have elapsed since service of the Notice of Claim, and the County has neglected and refused to adjust or pay Plaintiff's claims. This action is commenced within one year and ninety days of the accrual of Plaintiff's state law claims, as required by New York General Municipal Law § 50-i.

29. No notice of claim is required as a condition precedent to Plaintiff's claims under 42 U.S.C. § 1983. In addition, and in the alternative, no notice of claim is required as a condition precedent to Plaintiff's state law claims against the Sheriff, who is excluded from the defense and indemnification provisions of New York Public Officers Law § 18; to the extent any notice was required as to any Defendant, it was timely served as alleged above.

30. In addition, and in the further alternative, to the extent any administrative exhaustion requirement is held applicable to this action, Plaintiff satisfied it, or any such remedy was unavailable to him. Plaintiff submitted a written grievance concerning the assault on or about September 10, 2025. Upon information and belief, Defendants did not render a timely determination on that grievance, and no further administrative remedy was available to Plaintiff, particularly following his transfer to isolation, his subsequent psychiatric crises and hospitalizations, and his release from custody on January 14, 2026

## **STATEMENT OF FACTS**

### **A. Plaintiff's Civil Immigration Detention**

31. Plaintiff is a citizen of Venezuela who was taken into civil immigration detention by the federal government.

32. During his detention, Plaintiff was transferred among multiple detention facilities, including, upon information and belief, in response to petitions for writs of habeas corpus filed on his behalf.

33. Plaintiff's immigration counsel prevailed on numerous motions and applications seeking his release from detention. Upon information and belief, the federal government failed and refused to comply with those rulings, and Plaintiff remained detained.

34. At all times relevant to this Complaint, Plaintiff was detained at OCCF, a facility owned and operated by the County and administered by the Sheriff, which housed civil immigration detainees.

35. The officers who guarded, escorted, disciplined, and used force upon Plaintiff at OCCF were correction officers appointed by the Sheriff and employed and paid by the County.

**B. <u>Plaintiff's Peaceful Hunger Strike</u>**

36. In or about early September 2025, in protest of his continued detention notwithstanding the rulings directing his release, Plaintiff began a hunger strike and refused several consecutive meals.

37. Plaintiff's hunger strike was peaceful, non-violent expressive conduct undertaken to protest government action, specifically, his continued civil detention in defiance of judicial rulings, conditions of his confinement, and to petition for redress of these grievances.

38. At no time during his hunger strike did Plaintiff threaten, assault, or endanger any officer, employee, or detainee.

**C. <u>The September 10, 2025, Assault</u>**

39. On September 10, 2025, during the late afternoon or early evening hours, Plaintiff was escorted to the OCCF medical unit as a consequence of his refusal of meals.

40. Plaintiff was examined by medical staff and was then directed to enter a medical isolation unit.

41. The medical isolation unit was, in its conditions and effect, solitary confinement: Plaintiff would be confined alone, locked in, and deprived of the ordinary congregate activity, programming, and human contact afforded to detainees in general population.

42. Plaintiff verbally protested being placed in the isolation unit. His protest was peaceful. He did not strike, threaten, or physically resist any officer.

43. In response to Plaintiff's verbal protest, Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, struck Plaintiff forcefully in the chest multiple times.

44. The blows knocked Plaintiff to the ground. He landed on his back, twisting and striking his left knee in the fall.

45. As a result of the assault and fall, Plaintiff sustained injuries to his left knee, his neck, and his back.

46. Defendants then handcuffed Plaintiff. In the course of the handcuffing and the surrounding melee, Plaintiff's finger was cut and lacerated.

47. Throughout the assault, Defendants James House, Shield/ID No. 496, Correction Officer Andre Robinson, Shield/ID Number 109, Correction Officer Vincent Murphy, Shield/ID No. 544, and Correction Officer Christopher Mackey, Shield/ID No. 527, and, were present or in

the immediate vicinity, observed the use of force, had a realistic opportunity to intervene, and failed to do so.

48. At no point did Plaintiff's conduct pose any threat justifying the use of any force, let alone repeated blows to the chest of a physically weakened hunger striker.

49. On or about September 10, 2025, the date of the assault, or within one day thereafter, Plaintiff submitted a written grievance to OCCF staff complaining of the assault described herein and of his resulting injuries. By reason of that grievance, Defendants, including the supervisory Defendants and the County, had actual written notice, within one day of the assault, of Plaintiff's allegations that he had been beaten by correction officers, of the injuries he sustained, and of his placement in isolation. Notwithstanding that actual notice, Defendants took no corrective action; Plaintiff remained in isolation, his back, neck, and knee injuries remained untreated, and no Defendant was disciplined or removed from contact with Plaintiff. The grievance, and all records generated in response to or in connection with it, are in the exclusive possession of Defendants. Plaintiff does not presently possess a copy.

**D. <u>The Denial of Medical Care for Plaintiff's Injuries</u>**

50. Following the assault, Plaintiff was taken to the medical unit for treatment of the laceration to his finger.

51. While Plaintiff was in the medical unit, the Defendant officers escorting him refused to permit him to describe or report his back, neck, and knee injuries to medical staff, and prevented him from being examined or treated for those injuries.

52. As a result, Plaintiff's back, neck, and knee injuries went unexamined, undocumented, and untreated, causing him prolonged and unnecessary pain and, upon information and belief, aggravation of those injuries.

**E. <u>Punitive Isolation and Inhumane Conditions</u>**

53. After the finger laceration was treated, the officers returned Plaintiff to the medical isolation unit, where he was held in conditions of solitary confinement for several days.

54. The mattress provided to Plaintiff in the isolation unit was broken and worn such that its springs were exposed; sleeping on it was, in effect, sleeping directly on springs.

55. During his detention at OCCF, Plaintiff was served expired food, and was fed a diet consisting substantially of potatoes.

56. These conditions were not reasonably related to any legitimate, non-punitive governmental objective. They were imposed on a civil detainee as punishment for his peaceful protest.

**F. <u>The Coerced Abandonment of Plaintiff's Protest</u>**

57. Plaintiff was informed and understood that he would remain in the isolation unit unless and until he abandoned his hunger strike.

56. After several days in isolation, Plaintiff relented and resumed eating so that he would be released from isolation and permitted access to the yard and to ordinary conditions of confinement.

58. Defendants thereby used solitary confinement, physical violence, and the deprivation of humane conditions to punish Plaintiff's protected expression and to coerce its abandonment.

**G. <u>Plaintiff's Suicide Attempts and the Failure of Aftercare</u>**

59. The assault, isolation, and surrounding mistreatment caused Plaintiff severe psychological harm.

60. On or about September 25, 2025, after Plaintiff expressed suicidal ideation, he was moved to a medical unit, where he attempted suicide.

61. On or about September 27, 2025, two days later, Plaintiff attempted suicide a second time.

62. Following his suicide attempts, Plaintiff was transported to a hospital emergency room, the identity of which is presently unknown to Plaintiff, for emergency treatment.

63. Upon information and belief, in connection with that treatment Plaintiff was prescribed antidepressant medication.

64. Upon his return to OCCF, Defendants failed to regularly and consistently administer Plaintiff's prescribed antidepressant medication, notwithstanding their knowledge of his two recent suicide attempts and his obvious and serious mental health needs.

65. The failure to regularly administer prescribed psychiatric medication to a detainee who had twice attempted suicide within a period of days created a substantial and obvious risk of serious harm, including death.

**H. <u>Plaintiff's Release and Continuing Injuries</u>**

66. Plaintiff was released from custody on January 14, 2026.

67. As a result of Defendants' conduct, Plaintiff sustained physical injuries to his left knee, neck, back, and finger; endured pain, suffering, humiliation, fear, and emotional distress; suffered a severe deterioration of his mental health culminating in two suicide attempts; and continues to suffer physical and psychological injuries.

68. Since his release, Plaintiff has remains injured and intends to continue treatment.

**FIRST CAUSE OF ACTION**

**New York State; 42 U.S.C. § 1983 — Excessive Force**
**(Common Law; Fourteenth Amendment; in the alternative, Fifth Amendment)**
**Against Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305**

69. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

70. As a civil detainee, Plaintiff had the right under the Due Process Clause of the Fourteenth Amendment (and, in the alternative, the Fifth Amendment) to be free from the use of objectively unreasonable force. Further, Plaintiff's allegations herein are comport to the requirements of New York Common Law.

71. Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, acting under color of state law, used force against Plaintiff that was objectively unreasonable: they repeatedly struck a physically weakened, non-violent, verbally protesting civil detainee in the chest with sufficient force to knock him to the ground, injuring his knee, neck, back, and finger.

72. The force served no legitimate governmental purpose, was unreasonable, and was grossly disproportionate to any need presented. Plaintiff posed no threat and offered no physical resistance.

73. As a direct and proximate result, Plaintiff sustained the physical and psychological injuries described herein.

74. Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No.

529, and Correction Officer Greg Palmer, Shield/ID No. 305, acted intentionally, maliciously, and with reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages against them.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 — Failure to Intervene**
**Against Defendants James House, Shield/ID No. 496, Correction Officer Andre Robinson, Shield/ID Number 109, Correction Officer Vincent Murphy, Shield/ID No. 544, and Correction Officer Christopher Mackey, Shield/ID No. 527,**

75. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

76. Each Defendant officer who was present during the use of force against Plaintiff, or during the subsequent denial of medical care, and who did not himself directly commit the violation, observed the violation of Plaintiff's clearly established constitutional rights, had a realistic opportunity to intervene to prevent or curtail it, and failed to take reasonable steps to do so.

77. This claim is pleaded in the alternative as to each individual Defendant, such that each officer present is liable either as a direct participant or for his failure to intervene.

78. As a direct and proximate result, Plaintiff sustained the injuries described herein, and is entitled to compensatory and punitive damages against these Defendants.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 — Deliberate Indifference to Serious Medical Needs (Physical Injuries) Against Defendants James House, Shield/ID No. 496, Correction Officer Andre Robinson, Shield/ID Number 109, Correction Officer Vincent Murphy, Shield/ID No. 544, and Correction Officer Christopher Mackey, Shield/ID No. 527,**

79. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

80. Plaintiff's back, neck, and knee injuries constituted serious medical needs, presenting conditions of urgency capable of producing degeneration or extreme pain.

81. Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, intentionally interfered with and denied Plaintiff access to medical care for those injuries by preventing him from reporting them to medical staff and from being examined or treated, when a reasonable officer in their position knew or should have known that doing so posed an excessive risk to Plaintiff's health.

82. Under the objective standard applicable to civil detainees, Defendants' conduct was objectively unreasonable and constituted deliberate indifference to Plaintiff's serious medical needs, in violation of the Due Process Clause of the Fourteenth Amendment (and, in the alternative, the Fifth Amendment).

83. As a direct and proximate result, Plaintiff endured prolonged and unnecessary pain and aggravation of his injuries, and is entitled to compensatory and punitive damages against these Defendants.

## FOURTH CAUSE OF ACTION

**42 U.S.C. § 1983 — Deliberate Indifference to Serious Medical Needs (Mental Health) Against Defendants James House, Shield/ID No. 496, Correction Officer Andre Robinson, Shield/ID Number 109, Correction Officer Vincent Murphy, Shield/ID No. 544, Correction Officer Christopher Mackey, Shield/ID No. 527, and Supervisory Officer Joshua DeEntremont, Shield/ID No. 017**

84. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

85. Following two suicide attempts within a period of days and his hospitalization, Plaintiff's mental health condition constituted a serious medical need of the most urgent kind, of which all Defendants responsible for his custody and supervision were aware.

86. Defendants James House, Shield/ID No. 496, Correction Officer Andre Robinson, Shield/ID Number 109, Correction Officer Vincent Murphy, Shield/ID No. 544, Correction Officer Christopher Mackey, Shield/ID No. 527, and Supervisory Officer Joshua DeEntremont, Shield/ID No. 017 and each officer and supervisor responsible for Plaintiff's custody upon his return from the hospital, failed to ensure that Plaintiff regularly received his prescribed antidepressant medication and adequate mental health monitoring, when a reasonable officer knew or should have known that the failure to do so posed an excessive risk of serious harm, including a further suicide attempt.

87. Under the objective standard applicable to civil detainees, this conduct was objectively unreasonable and constituted deliberate indifference to Plaintiff's serious medical needs, in violation of the Due Process Clause of the Fourteenth Amendment (and, in the alternative, the Fifth Amendment).

88. As a direct and proximate result, Plaintiff suffered prolonged psychological harm and deterioration, and is entitled to compensatory and punitive damages against these Defendants.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. § 1983 — Unconstitutional Conditions of Confinement / Punishment of a Civil Detainee**
**Against All Defendants**

89. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

90. As a civil detainee, Plaintiff could not constitutionally be subjected to conditions of confinement amounting to punishment.

91. Defendants subjected Plaintiff to punishment: they confined him in solitary conditions for several days in response to his peaceful protest; furnished him a broken mattress with exposed springs; and fed him expired food — conditions imposed with punitive intent and, in any event, excessive in relation to any legitimate, non-punitive governmental objective.

92. Under the objective standard applicable to civil detainees, these conditions, singly and in combination, deprived Plaintiff of due process in violation of the Fourteenth Amendment (and, in the alternative, the Fifth Amendment).

93. As a direct and proximate result, Plaintiff suffered physical and psychological injuries, and is entitled to compensatory and punitive damages against these Defendants.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. § 1983 — First Amendment Retaliation**
**Against All Defendants**

94. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

95. Plaintiff's hunger strike was peaceful expressive conduct and a petition for redress of grievances protected by the First Amendment: a protest of his continued civil detention in defiance of judicial rulings directing his release.

96. In retaliation for that protected activity, Defendants confined Plaintiff in solitary conditions, beat him, denied him medical care, and subjected him to inhumane conditions, releasing him from isolation only when he abandoned his protest.

97. Defendants' adverse actions would deter a person of ordinary firmness from continuing to engage in protected activity, and in fact coerced Plaintiff into abandoning his protest. Plaintiff's protected activity was a substantial and motivating factor in Defendants' conduct.

98. As a direct and proximate result, Plaintiff suffered the injuries described herein, and is entitled to compensatory and punitive damages against these Defendants.

## SEVENTH CAUSE OF ACTION
**42 U.S.C. § 1983 — Municipal Liability (*Monell*)**
**Against Defendant County of Orange**

99. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

100. Upon information and belief, the County, acting through the Sheriff as its final policymaker for the operation of OCCF, maintained an official policy, practice, or custom of responding to hunger strikes by civil detainees by confining the striking detainee in medical isolation amounting to solitary confinement, without regard to whether such confinement was medically necessary or the least restrictive means available, and of using such confinement to coerce the abandonment of the strike.

101. Upon information and belief, the County further maintained customs and practices of: (a) tolerating the use of unnecessary force against detainees at OCCF; (b) housing detainees on broken and unsanitary bedding and serving expired and nutritionally inadequate food; (c) failing to ensure continuity of prescribed psychiatric medication and mental health care for detainees returning from emergency psychiatric treatment, notwithstanding prior notice of deficiencies in mental health care for immigration detainees at OCCF; and (d) failing to adequately train,

supervise, and discipline OCCF officers concerning the use of force against, and the constitutional rights of, civil detainees.

102. These policies, practices, and customs were the moving force behind the violations of Plaintiff's constitutional rights described herein, and reflected deliberate indifference by the County's policymakers to the known and obvious consequences of those policies for the rights of detainees.

103. As a direct and proximate result, Plaintiff suffered the injuries described herein, and is entitled to compensatory damages against the County.

**EIGHTH CAUSE OF ACTION**
**Battery (New York Common Law)**
**Against Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, and the County of Orange**

104. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

105. Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, intentionally made harmful and offensive bodily contact with Plaintiff, without his consent and without privilege or justification, by striking him repeatedly in the chest, knocking him to the ground, and forcibly handcuffing him in a manner that lacerated his finger.

106. At all relevant times, Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, Defendants John Does 1–4 acted within the scope of their employment as correction officers, in furtherance of the

business of their employer, the County of Orange. The County is liable for their conduct under the doctrine of respondeat superior.

107. As a direct and proximate result, Plaintiff sustained the physical and psychological injuries described herein, and is entitled to compensatory damages against all Defendants named in this cause of action and punitive damages against the individual Defendants.

**NINTH CAUSE OF ACTION**
**Assault (New York Common Law)**
**Against Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, and the County of Orange**

108. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

109. Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. 305, intentionally placed Plaintiff in imminent apprehension of harmful and offensive bodily contact, without privilege or justification.

110. At all relevant times, Defendants Correction Officer Daniel A. Figueroa, Shield/ID No. 132, Correction Officer Michael Delgado, Shield/ID No. 134, Correction officer Konstantin Medov, Shield/ID No. 529, and Correction Officer Greg Palmer, Shield/ID No. **305,** acted within the scope of their employment, and the County is liable for their conduct under the doctrine of respondeat superior.

111. As a direct and proximate result, Plaintiff suffered fear, apprehension, and emotional distress, and is entitled to compensatory damages against all Defendants named in this cause of action and punitive damages against the individual Defendants.

**TENTH CAUSE OF ACTION**
**Negligence (New York Common Law)**
**Against Defendant County of Orange**

112. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

113. Having taken Plaintiff into custody and deprived him of the ability to care for himself, the County owed Plaintiff a duty to exercise reasonable care for his health, safety, and wellbeing, including the provision of habitable conditions, adequate and unexpired food, safe bedding, and reasonable access to medical and mental health care.

114. The County, by its officers, employees, and agents acting within the scope of their employment, breached that duty by, among other things, housing Plaintiff on a broken mattress with exposed springs, serving him expired food, failing to secure examination and treatment of his back, neck, and knee injuries, and failing to ensure the regular administration of his prescribed psychiatric medication following two suicide attempts.

115. As a direct and proximate result of these breaches, Plaintiff sustained physical and psychological injuries, and is entitled to compensatory damages against the County. This cause of action sounds in negligence and is pleaded as to conduct distinct from the intentional torts alleged above.

**ELEVENTH CAUSE OF ACTION**
**Negligence in the Care and Custody of Detainees (New York Common Law)**
**Against Defendant Sheriff**

116. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

117. As the custodian of OCCF and of the persons detained there, the Sheriff owed Plaintiff a duty of care to keep him safe from reasonably foreseeable harm, including harm arising

from the conditions of his confinement and from deficiencies in the supervision of the officers and units under the Sheriff's charge.

118. The Sheriff breached that duty by failing to adequately supervise the operation of the medical isolation unit and the officers assigned to it, and by permitting the conditions and practices described herein to persist at OCCF.

119. As a direct and proximate result, Plaintiff sustained the injuries described herein, and is entitled to compensatory damages against the Sheriff.

**TWELFTH CAUSE OF ACTION**
**Negligent Hiring, Training, Supervision, and Retention (New York Common Law)**
**Against Defendant County of Orange (Pleaded in the Alternative)**

120. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

121. This cause of action is pleaded in the alternative, and applies to the extent any individual Defendant is found to have acted outside the scope of his employment.

122. The County knew or should have known of the propensity of the individual Defendants to engage in the conduct alleged herein, and negligently hired, trained, supervised, and retained them notwithstanding that knowledge.

123. As a direct and proximate result, Plaintiff sustained the injuries described herein, and is entitled to compensatory damages against the County.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment:

(a) Awarding Plaintiff compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

(b) Awarding Plaintiff punitive damages against the individual Defendants in an amount to be determined at trial;

(c) Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(d) Awarding pre-judgment and post-judgment interest as permitted by law; and

(e) Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
September 8, 2026

Respectfully submitted,

SACCO & FILLAS, LLP
By: Philip Reid, Esq.
Attorneys for Plaintiff
Jackson Ortiz Hernandez
32 Broadway, Suite 1818
New York, New York 10004
(718) 746-3440
Our File No. 37970-25
preid@saccofillas.com